**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

MRS. UNITED STATES NATIONAL PAGEANT, INC.,

                    Plaintiff,

            vs.                                    **AMENDED COMPLAINT**

MISS UNITED STATES OF AMERICA            **Civ. No.:  12-CV-06137(DGL)**
ORGANIZATION, LLC, and

STEVEN GAMBRELL, individually, and

TAMMY JOHNS, individually

                    Defendants.

Plaintiff, Mrs. United States National Pageant, Inc. ("Plaintiff"), by its attorneys, Woods Oviatt Gilman LLP, for its complaint against the Defendants, alleges as follows:

### PRELIMINARY STATEMENT

1.      This action involves Defendants individually and collectively infringing in conscious disregard upon the superior rights of Plaintiff senior user's well-established trademarks causing consumer, contestant and spectator confusion in addition to a false suggestion of endorsement, sponsorship or other association by and between Plaintiff and Defendants. This action also involves Defendant Tammy Johns' breach of her contract with Plaintiff regarding use Plaintiff's trademarks and Defendant Miss United States of America Organization, LLC's tortious interference with said contract.

Woods Oviatt Gilman LLP
700 Crossroads Building
2 State Street
Rochester, New York 14614

## JURISDICTION AND VENUE

2.      This Court has jurisdiction of this action by virtue of 15 U.S.C. §§ 1114 and

1125(a) and the Court has jurisdiction over the State common law claims by virtue of 28 U.S.C.

§§ 1338(b) and 1367, as well as CPLR 302.

3.      Upon information and belief, Defendants market and sell their infringing goods

and services in New York State and further derive substantial revenues through interstate

commerce.

4.      The trademarks upon which Defendants are infringing are owned by Plaintiff, a

New York corporation, and are located here in New York State.

5.      Venue of this action is set in the United States District Court for the Western

District of New York by virtue of 28 U.S.C. § 1391(a) and (b).

6.      Jurisdiction and venue are further made appropriate by Defendant Tammy Johns'

execution of a certain 2009 Title Holder Agreement with Plaintiff which provides, in pertinent

part:

> This Agreement shall be construed in accordance with the internal laws of
> the State of New York. The venue for any proceedings relating to the
> provisions hereof, or the construction, interpretation, or enforcement
> thereof, or any breach or alleged breach thereof, shall take place in the
> City of Rochester, State of New York, regardless of the forum in which
> this agreement or part thereof may have been negotiated or executed.

A copy of said 2009 Title Holder Agreement is annexed hereto as **Exhibit A.**

Woods Oviatt Gilman LLP
700 Crossroads Building
2 State Street
Rochester, New York 14614

## THE PARTIES

7.     Mrs. United States National Pageant, Inc. is, and at all times hereinafter mentioned was, a corporation duly organized under the laws of the State of New York, and is located at 3 Fairfield Drive, Fairport, NY 14450.

8.     Upon information and belief, Defendant Miss United States of America Organization, LLC ("the Defendant Organization") is, and at all times hereinafter mentioned was, a limited liability company, duly organized and existing under the laws of the State of South Carolina, with a registered agent's address located at 1591 Savannah Hwy Ste. 201, Charleston, SC 29407-7843.

9.     Upon information and belief, Defendant Steven Gambrell ("Mr. Gambrell") is the CEO and a member of Defendant Organization.

10.    Defendant Tammy Johns ("Mrs. Johns") was crowned Plaintiff's 2009 MRS. UNITED STATES®. Upon information and belief, Defendant Tammy Johns ("Mrs. Johns") is the President and a member of Defendant Organization.

## BACKGROUND

11.    Plaintiff's President, Isabella Ilacqua, first became involved in the pageantry business in 1985 and has continuously developed, grown and operated beauty pageants up to the present day. Plaintiff owns, and its various pageants are known and operated under, the following 8 (eight) U.S. Federally Registered Trademarks:

1.  MRS. UNITED STATES® - U.S. TM Reg. No. 2083350

2.  MRS. UNITED STATES NATIONAL PAGEANT® - U.S. TM Reg. No. 1851722

3.  MISS UNITED STATES® - U.S. TM Reg. No. 3428292

Woods Oviatt Gilman LLP
700 Crossroads Building
2 State Street
Rochester, New York 14614

4.  MS. UNITED STATES® - U.S. TM Reg. No. 2157123

5.  LITTLE MISS UNITED STATES® - U.S. TM Reg. No. 4027072

6.  MISS JUNIOR TEEN UNITED STATES® - U.S. TM Reg. No. 3234362

7.  MISS TEEN UNITED STATES® - U.S. TM Reg. No. 3234363

8.  MISS TEENAGER UNITED STATES® - U.S. TM Reg. No. 2824308

These trademarks are collectively referred to herein as "Plaintiff's Trademarks."

12.    Plaintiff, under the direction of President Isabella Ilacqua, has planned, organized and conducted the MRS. UNITED STATES NATIONAL PAGEANT® every year for the last 25 years wherein the winner is crowned MRS. UNITED STATES® and wears a crown and sash that prominently reads "MRS. UNITED STATES". Plaintiff held its 25th Anniversary MRS. UNITED STATES NATIONAL PAGEANT® on August 4, 2011 in Las Vegas, Nevada.

13.    Plaintiff exclusively licenses all of the other Plaintiff's Trademarks (MISS UNITED STATES®, MS. UNITED STATES®, LITTLE MISS UNITED STATES®, MISS JUNIOR TEEN UNITED STATES®, MISS TEEN UNITED STATES®, and MISS TEENAGER UNITED STATES® (collectively referred to herein as "Plaintiff's Licensed Trademarks")) to carefully chosen National and State Directors (hereinafter collectively referred to as "Plaintiff's Directors") who plan, organize and conduct those pageants under Plaintiff's Licensed Trademarks with the ultimate oversight and quality control by Plaintiff.

14.    Plaintiff owns and operates a website to advertise its Mrs. United States pageant under the following domain name ("the Plaintiff's Website"):

www.mrsunitedstates.com

15.     Plaintiff's Trademarks and Plaintiff's Website were created at great expense to Plaintiff over many years and it clearly owns the exclusive rights to the recognition and goodwill associated therewith.

## PLAINTIFF HAS
## GENERATED SIGNIFICANT GOODWILL

16.     Over the years, Plaintiff has earned a reputation for professional excellence, personal attention to its pageant contestants and winners, and integrity in its business dealings and as such, has earned the respect of many people working in the pageant industry.

17.     Plaintiff and Plaintiff's Licensees have, over the course of its more than 25 years in business, advertised and otherwise promoted its pageants throughout the Unites States market and, as a result, Plaintiff's pageants and associated Plaintiff's Trademarks have developed significant name recognition and goodwill throughout the pageantry business and have attained famous status.

18.     These advertising and other promotional efforts have been undertaken at great expense for the purpose of developing and perpetuating name recognition and goodwill among existing and prospective contestants, spectators, vendors and business partners.

19.     These advertising and promotional efforts have been effective and the Plaintiff's Trademarks are all associated with no one other than Plaintiff MRS. UNITED STATES NATIONAL PAGEANT, INC.

**THE DEFENDANTS WERE AT ALL TIMES WELL AWARE OF PLAINTIFF, PLAINTIFF'S TRADEMARKS AND PLAINTIFF'S WELL-KNOWN AND RESPECTED REPUTATION IN THE PAGEANTRY BUSINESS AND ADOPTED THE INFRINGING MARKS WITH BAD FAITH AND INTENT TO PROFIT FROM PLAINTIFF'S TRADMARKS**

20.     Defendant Tammy Johns and Plaintiff know each other *very* well as Mrs. Johns was a contestant and ultimately crowned Plaintiff's 2009 MRS. UNITED STATES®.

21.     Just last year, Mrs. Johns, along with many other past years' MRS. UNITED STATES® winners, attended the 2011 Anniversary MRS. UNITED STATES NATIONAL PAGEANT® on August 4, 2011 in Las Vegas, Nevada and was, in fact, a performer who sang on stage at the event. While at the Las Vegas pageant, Defendant Tammy Johns approached Plaintiff President Ms. Isabella Ilacqua with an offer for a television advertising deal for the Mrs. United States 2012 pageant which Plaintiff refused.

22.     Defendant Ms. Johns also inquired as to whether Plaintiff would consider selling some of Plaintiff's Trademarks which Plaintiff again refused.

23.     Upon returning home to New York, on August 17, 2011, Plaintiff President Isabella Ilacqua received an email from Mr. John Vannatta (wherein he copied Defendant Ms. Johns and a Justin Vannatta) wherein John Vannatta encouraged Isabella Ilacqua to reconsider Ms. Johns' offer. Further into the email, John Vannatta, on behalf of himself, Justin Vannatta, and Defendants Tammy Johns and Steven Gambrell, offers to buy the Plaintiff's Trademarks for One Million Dollars plus a Ten Thousand Dollar annual salary if Ms. Ilacqua would stay on as a consultant.

24.     Again Ms. Ilacqua refused the offer to sell Plaintiff's Trademarks.

25.     Upon information and belief, Defendants Tammy Johns and Steven Gambrell on September 20, 2011 (a little over one month from the August 17, 2011 date of the above email

attempting to buy Plaintiff's Trademarks) formed Defendant entity Miss United States of America, LLC in South Carolina.

26.    Through the association with Plaintiff, Defendant Tammy Johns clearly knew of Plaintiff's Trademarks and, once she was denied the ability to purchase the Plaintiff's Trademarks, acted in bad faith by proceeding to form an entity to organize and conduct pageants using trademarks almost identical to Plaintiff's Trademarks.

27.    Furthermore, through the contact she has had with Plaintiff over the years, Defendant Tammy Johns has gained detailed, non-public knowledge of how Plaintiff plans, organizes and conducts the MRS. UNITED STATES NATIONAL PAGEANT® and is now using that knowledge to create and operate the infringing pageants detailed herein to the detriment of Plaintiff.

28.    Defendant Steve Gambrell and Plaintiff also know each other *very* well as Mr. Gambrell was a State Director for Plaintiff's organization from 2008 until 2011 wherein Defendant Steve Gambrell conducted pageants, under license from Plaintiff organization, in the Miss United States®, Ms. United States®, Miss Teen United States® and Miss Junior Teen United States® pageants.

29.    Through this association with Plaintiff, Defendant Steven Gambrell knew of Plaintiff's Trademarks.

30.    Through this association with Plaintiff, Defendant Steve Gambrell clearly knew of Plaintiff's Trademarks and, once he was denied the ability to purchase the Plaintiff's Trademarks, acted in bad faith by proceeding to form an entity with Defendant Ms. Johns to organize and conduct pageants using trademarks almost identical to Plaintiff's Trademarks.

Woods Oviatt Gilman LLP
700 Crossroads Building
2 State Street
Rochester, New York 14614

31.    Furthermore, through the contact he has had with Plaintiff over the years, Defendant Steve Gambrell has gained detailed, non-public knowledge of how Plaintiff plans, organizes and conducts the MRS. UNITED STATES NATIONAL PAGEANT® and is now using that knowledge to create and operate the infringing pageants detailed herein to the detriment of Plaintiff.

32.    Having had their offer to purchase Plaintiff's Trademarks and business rejected, upon information and belief, Defendant Tammy Johns and Defendant Steve Gambrell, approximately one month following the 25th Anniversary MRS. UNITED STATES NATIONAL PAGEANT®  and the above-referenced email, together formed Defendant Organization on September 20, 2011 to conduct various pageants.

33.    Upon information and belief, Defendants on October 5, 2011 filed Federal Trademark Applications for the trademarks MISS UNITED STATES OF AMERICA and MRS. UNITED STATES OF AMERICA which were assigned U.S. Trademark Application Serial Numbers 85440251and 85440545, respectively.

34.    On or about September 2, 2011, Defendant Steven Gambrell registered and the Defendant    Organization    now    operates    a    website    under    the    domain www.missunitedstatesofamerica.com    (the    "Defendant    Website")    which    includes    an announcement that the 2012 Miss United States of America Pageant will be held July 22-28, 2012 in Savannah, Georgia.

35.    A webpage from Defendant's Website displays the following message:

**"The Miss United States of America national pageant is a competition which awards scholarships and prizes to young women from the 50 states plus the District of Columbia, Puerto Rico and the US Virgin Islands. Also held in conjunction with the Miss United States of America Pageant are the Miss Teen United States of America and Mrs United States of America competitions. Miss Teen United States of America,**

**Miss United States of America, and Mrs United States of America are proprietary servicemarks owned by Miss United States of America Organization LLC."**

36.    Upon information and belief, pageant tickets may be purchased by following a link to the Savannah Box Office website link.

37.    A    footnote    appearing    at    the    bottom    of    the    web    page www.missunitedstatesofamerica.com/2012-Contestants.html reads:

> **"Miss Junior Teen United States of America, Miss Teen United States of America, Miss United States of America, and Mrs. United States of America are proprietary service marks owned by Miss United States of America Organization LLC."**

38.    Each of these marks used by Defendants are confusingly similar to, dilutive of, or otherwise violate one or more of Plaintiff's Trademarks.


## THE DEFENDANTS HAVE INFRINGED AND CONTINUE TO INFRINGE UPON PLAINTIFF'S INTELLECTUAL PROPERTY RIGHTS DESPITE PLAINTIFF'S DEMAND THAT THE INFRINGING ACTIVITY BE STOPPED

39.    With full knowledge of Plaintiff's pageant business, Plaintiff's Trademarks and their associated goodwill and value as discussed above, Defendants purposely selected and continue to use a business name, trademarks and domain name that are substantially similar to Plaintiff's Trademarks, evidencing Defendant's bad faith and attempt to ride the coat tails and profit from Plaintiff's extensive trademark brand recognition, good faith, and stellar reputation in Plaintiff's commercially successful and well-established pageantry business.

40.    Due to Defendants' past association with Plaintiff, Defendants have learned directly from Plaintiff how to conduct pageants and the details of running a successful pageant business. Defendants are now using this information to directly compete with Plaintiff with a business name, trademarks and website that are confusingly similar to, cause mistake, or deceive

as to the affiliation, connection or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's pageant services and commercial activities, and thus infringe and dilute Plaintiff's Trademarks and violate Plaintiff's intellectual property rights.

41.     Having learned of Defendants' infringing activities in or around October of 2011, Plaintiff, through its counsel, sent a "cease and desist" letter dated November 2, 2011 to Ms. Johns (as Founder of Defendant Organization) and Defendant Organization complaining of the infringement and demanding that the infringing activity stop.

42.     The cease and desist letter did not include Defendant Steven Gambrell as his involvement with Defendant Organization and the infringing activities discussed herein were not known to Plaintiff at that time.

43.     By letter dated December 6, 2011, through its counsel, Defendant Organization and Defendant Tammy Johns declined any demand to stop using the infringing marks, erroneously alleging Plaintiff's Trademarks are invalid and/or unenforceable.

## AS AND FOR A FIRST CAUSE OF ACTION, PLAINTIFF ALLEGES AS FOLLOWS:

44.     As a result of the foregoing, the Defendants have violated 15 U.S.C. §§ 1114(1) and 1125(a) and are liable to plaintiff for any damage it has sustained and will sustain should Defendants be allowed to continue their infringing and unlawful activity.

## AS AND FOR A SECOND CAUSE OF ACTION, PLAINTIFF ALLEGES AS FOLLOWS:

45.     Plaintiff repeats and realleges the allegations of paragraphs "1" through "44" as if more fully set forth herein.

46.      Plaintiff has no adequate remedy at law.

47.      As a result of the foregoing, Plaintiff is entitled to a preliminary and permanent injunction, restraining and enjoining the Defendants from using the marks MISS UNITED STATES OF AMERICA, MRS. UNITED STATES OF AMERICA, MISS JUNIOR TEEN UNITED STATES, MISS TEEN UNITED STATES OF AMERICA, MRS. UNITED STATES OF AMERICA PAGEANT and any other confusingly similar or marks that are dilutive to or otherwise violate Plaintiff's Trademarks.

## AS AND FOR A THIRD CAUSE OF ACTION, PLAINTIFF ALLEGES AS FOLLOWS:

48.      Plaintiff repeats and realleges the allegations of paragraphs "1" through "47" as if more fully set forth herein.

49.      The Defendants' conduct in the actions above violate general principles of law and equity, constitute trade name infringement, unfair competition and injury to business reputation under New York General Business Law §§ 360-K, 360-L, and 360-M and have, and will cause, Plaintiff irreparable injury.

50.      Plaintiff has no adequate remedy at law.

51.      As a result of the foregoing, the Plaintiff is entitled to a permanent injunction, restraining and enjoining the Defendants from using the marks Miss United States of America Pageant, Miss Teen United States of America and Mrs United States of America, and any other marks which are confusingly similar or marks that are dilutive to or otherwise violate Plaintiff's Trademarks.

## AS AND FOR A FOURTH CAUSE OF ACTION,
## PLAINTIFF ALLEGES AS FOLLOWS:

52.      Plaintiff repeats and realleges the allegations of paragraphs "1" through "51" as if more fully set forth herein.

53.      The Defendants' conduct and the actions alleged above constitute common law trade name infringement and unfair competition arising under the laws of the State of New York.

54.      If the Defendants are permitted to continue using the marks Miss United States of America Pageant, Miss Teen United States of America, Miss Junior Teen United States of America and Mrs. United States of America and any other marks which are confusingly similar to Plaintiff's Trademarks, the Plaintiff will be irreparably harmed.

55.      Plaintiff has no adequate remedy at law.

56.      As a result of the foregoing, the Plaintiff is entitled to a permanent injunction, restraining and enjoining the Defendants from using the marks Miss United States of America Pageant, Miss Teen United States of America, Miss Junior Teen United States of America and Mrs. United States of America and any other marks which are confusingly similar to or marks that are dilutive to or otherwise violate Plaintiff's Trademarks.

## AS AND FOR A FIFTH CAUSE OF ACTION,
## PLAINTIFF ALLEGES AS FOLLOWS:

57.      Plaintiff repeats and realleges the allegations of paragraphs "1" through "56" as if more fully set forth herein.

58.      As a result of the foregoing, Plaintiff is entitled to a judgment (1) declaring that it has superior rights to Plaintiff's Trademarks and/or any similar marks; (2) declaring that the Defendants are the junior users of the marks Miss United States of America Pageant, Miss Teen

United States of America, Miss Junior Teen United States of America and Mrs. United States of America and any other marks which are confusingly similar to or marks that are dilutive to or otherwise violate Plaintiff's Trademarks; and (3) further declaring the respective rights and responsibilities of the parties.

### AS AND FOR A SIXTH CAUSE OF ACTION, PLAINTIFF ALLEGES AS FOLLOWS:

59.     Plaintiff repeats and realleges the allegations of paragraphs "1" through "58" as if more fully set forth herein.

60.     The Plaintiff's Website domain name was distinctive at the time of its registration.

61.     Defendants, with bad faith and intent to profit from Plaintiff's Trademarks and Website domain, registered and/or traffic in a domain name which is confusingly similar to Plaintiff's distinctive domain name.

62.     As a result of the foregoing, the Defendants have violated 15 U.S.C. § 1125(d) and are liable to Plaintiff for any damage it sustains.

63.     As a result of the foregoing, the Plaintiff is entitled to a permanent injunction restraining and enjoining the Defendants from using the domain name "missunitedstates.net" or any confusingly similar or dilutive domain name on the Internet.

### AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST DEFENDANT TAMMY JOHNS, PLAINTIFF ALLEGES AS FOLLOWS:

64.     Plaintiff repeats and realleges the allegations of paragraphs "1" through "63" as if more fully set forth herein.

65.     In 2009, Plaintiff, on the one hand, and Mrs. Johns, on the other, entered into a certain 2009 Title Holder Agreement (the "Agreement") pursuant to which, among other things, Plaintiff granted Mrs. Johns the title of ***MRS. UNITED STATES 2009***. A copy of the Agreement is annexed hereto as Exhibit A.

66.     The Agreement provided, in pertinent part, that:

> "Title Holder shall use the ***MRS UNITED STATES-2009***, together with the logos and marks associated therewith, only in the manner approved by [Plaintiff] in writing. Title Holder hereby recognizes [Plaintiff] as having the exclusive right to the trade names, trademarks, and logos of the **Mrs. United States Pageant, Inc.** and the Title ***MRS. UNITED STATES-2009***. Any use thereof by Title Holder may only be pursuant to the specific provisions of this Agreement or with the advance written permission of [Plaintiff]." Agreement at pg. 1 (emphasis in original).

67.     The Agreement further provided that its term began with Mrs. Johns' "winning of the title at the **2009 Mrs. United States Pageant**" and would end "upon the Crowning of the 2010 Mrs. United States at the 2010 National Pageant, at a date and time to be announced during the 2010 year."

68.     Mrs. Johns' crowned the 2010 Mrs. United States on July 22, 2010 and, thus, the term of the Agreement expired on that date.

69.     The Agreement further provided that:

> "Upon expiration or termination of this Agreement, any rights of the Title Holder to such trademarks, names, logos, etc. shall expire and terminate. Title Holder shall immediately discontinue use of such name, logos, and marks, etc., and all brochures, promotional materials, etc. using such names, logos, and marks shall be turned over to [Plaintiff], without cost to [Plaintiff]." Agreement at § A(4).

Woods Oviatt Gilman LLP
700 Crossroads Building
2 State Street
Rochester, New York 14614

70.     Upon information and belief, defendant Johns continues to use the MRS UNITED STATES® mark in the promotion of her dance studio. Such use is unauthorized by Plaintiff and in violation of the express terms of her Agreement.

71.     By reason of all the above-described infringing activities and otherwise, Mrs. Johns' has breached the above-quoted provisions of the Agreement through her unauthorized, infringing use of Plaintiff's trademarks, including MRS. UNITED STATES®.

72.     As a result of Mrs. Johns' breach of the Agreement, Plaintiff has been irreparably injured.

73.     Plaintiff has no adequate remedy at law.

74.     In the alternative, Plaintiff has been damaged in an amount to be determined by the trier of fact.

## AS AND FOR AN EIGHTH CAUSE OF ACTION AGAINST DEFENDANTS GAMBRELL AND MISS UNITED STATES OF AMERICA ORGANIZATION, LLC

75.     Plaintiff repeats and realleges the allegations of paragraphs "1" through "74" as if more fully set forth herein.

76.     Upon information and belief, at all times herein mentioned, the Defendant Organization and Gambrell had actual notice and knowledge of the existence of the Agreement and the provisions thereof governing Mrs. Johns' use of Plaintiff's trademark, **MRS. UNITED STATES®**.

77.     Notwithstanding knowledge of the same, upon information and belief, the Defendant Organization and Gambrell, have wrongfully and intentionally induced Mrs. Johns' to breach the said Agreement without justification and Plaintiff has been damaged as a result thereof.

78. Plaintiff has no adequate remedy at law.

79. In the alternative, Plaintiff has been damaged in an amount to be determined by the trier of fact.

**TRIAL BY JURY DEMANDED**

Plaintiff demands a trial by jury on all issues so triable.

WHEREFORE, the Plaintiff, MRS. UNITED STATES NATIONAL PAGEANT, INC., demands judgment as follows:

A. Granting a permanent injunction, restraining and enjoining the Defendants, their members, officers, directors, agents, servants, employees and all others acting on their behalf or in their stead, from further acts of trade name infringement and unfair competition and, more particularly, from, in any manner, directly or indirectly:

(i) using the marks Miss United States of America Pageant, Miss Teen United States of America, Miss Junior Teen United States of America and Mrs. United States of America and any other marks which are confusingly similar to or marks that are dilutive to or otherwise violate Plaintiff's Trademarks;

(ii) using the marks Miss United States of America Pageant, Miss Teen United States of America, Miss Junior Teen United States of America and Mrs. United States of America and any other marks which are confusingly similar to or marks that are

Woods Oviatt Gilman LLP
700 Crossroads Building
2 State Street
Rochester, New York 14614

dilutive to or otherwise violate Plaintiff's Trademarks in connection with the operation and advertising of pageants;

(iii)  otherwise using or exploiting using the marks Miss United States of America Pageant, Miss Teen United States of America, Miss Junior Teen United States of America and Mrs. United States of America and any other marks which are confusingly similar to or marks that are dilutive to or otherwise violate Plaintiff's Trademarks in connection with the operation and advertising of pageants;

(iv)  assisting, aiding or abetting any other person or entity from engaging or performing any of the activities referred to in subparagraphs 1(i)–(iiii) above;

(v)  declaring that the Defendants have unfairly competed with the Plaintiff by the acts complained of herein and further declaring the respective rights and responsibilities of the parties;

C.  Granting an order requiring the Defendants to deliver up for destruction all products, and all promotional and/or advertising materials of any kind bearing the marks Miss United States of America Pageant, Miss Teen United States of America, Miss Junior Teen United States of America and Mrs. United States of America and any other marks which are confusingly similar to or marks that are dilutive to or otherwise violate Plaintiff's Trademarks;

D.      Cancelling, or directing the forfeiture of, the domain name: "missunitedstatesof america.com" and any other confusingly similar or dilutive domain name to Plaintiff's website domain or, in the alternative, transferring ownership of said domain names to the Plaintiff;

E.      Awarding to the Plaintiff any profits generated by the Defendants as a result of the acts complained of and further awarding Plaintiff its damages as a result of the Defendants' wrongful trademark infringement and unfair competition in an amount to be determined by an accounting, if necessary;

F.      Granting a permanent injunction, restraining and enjoining Defendants as well as their members, directors, officers, agents, servants, employees and all others acting on her behalf or in her stead, from and further acts in breach of her 2009 Title Holder Agreement, including any further use of the MRS. UNITED STATES® trademark;

G.      In the alternative, awarding Plaintiff damages incurred by reason of defendant Johns' breach of her 2009 Title Holder Agreement in an amount to be determined by the trier of fact;

H.      In the alternative, awarding Plaintiff damages incurred by reason of defendant Gambrell's and Defendant Miss United States of America Organization, LLC's inducement of defendant Johns' breach of her 2009 Title Holder Agreement in an amount to be determined by the trier of fact;

G.     awarding the Plaintiff its attorneys' fees and costs; and

H.     granting the Plaintiff such other and further relief as to this Court may seem just and proper.

DATED: April 23, 2012         WOODS OVIATT GILMAN LLP
Rochester, New York

By: /s/ Donald W. O'Brien, Jr.
    Donald W. O'Brien, Jr. Esq.
    Katherine H. McGuire, Esq.
    *Attorneys for Plaintiff*
    700 Crossroads Building
    2 State Street
    Rochester, New York 14614
    585.987.2800
    dobrien@woodsoviatt.com
    kmcguire@woodsoviatt.com

{1521638: }       Woods Oviatt Gilman LLP
700 Crossroads Building
2 State Street
Rochester, New York 14614       19

## CERTIFICATE OF SERVICE

I, DONALD W. O'BRIEN, JR., hereby certify that on April 25, 2012, I electronically filed Plaintiff's Amended Complaint through the Court's ECF System. In addition, the Amended Complaint and Acknowledgement of Service of Process were served via Federal Express, overnight delivery on April 24, 2012, on the following:

> Todd Ellis, Esq.
> *Attorney for Defendants*
> Law Office of Todd Ellis, P.A.
> 7911 Broad River Road, Suite 100
> Irmo, South Carolina 29606

Dated: April 25, 2012                    WOODS OVIATT GILMAN LLP

By:    /s/: Donald W. O'Brien, Jr.
       Donald W. O'Brien, Jr., Esq.
       *Attorneys for Plaintiff*
       700 Crossroads Building
       2 State Street
       Rochester, New York 14614
       585.987.2800
       dobrien@woodsoviatt.com

**EXHIBIT A**

# *Mrs.* UNITED STATES ® *PAGEANT*

3 Fairfield Drive, Fairport, New York 14450
Phone (585) 388-2857

## 2009 TITLE HOLDER AGREEMENT

NAME ___Tammy Johns-Brown___ E-MAIL ___tjdancestation@aol.com___

STATE(State Title) ___South Carolina___

RESIDENCE ADDRESS ___290 Laminack Road in Prosperity, South Carolina 29127___

CITY ___Prosperity___ STATE ___South Carolina___ ZIP CODE ___29127___

TELEPHONE ___(803) 315.1282___ ___(803) 932.9999___ ___(803) 364.3699___
           Residence              Business              Fax

Subject to the provisions of this Agreement, **Mrs. United States Pageant, Inc.** (herein referred to as MUSP) grants the Title *MRS. UNITED STATES 2009* to ___Tammy Johns-Brown___ the current *Mrs.* _____ UNITED STATES (and herein after referred to as Title Holder). Title Holder shall use the *MRS. UNITED STATES – 2009,* together with the logos and marks associated therewith, only in the manner approved by MUSP in writing. Title Holder hereby recognizes MUSP as having the exclusive right to the trade names, trademarks, and logos of the **Mrs. United States Pageant, Inc.** and the Title *MRS. UNITED STATES – 2009.* Any use thereof by the Title Holder may only be pursuant to the specific provisions of this Agreement or with the advance written permission of MUSP.

**This Agreement is subject to and in accordance with procedures prescribed by Mrs. United States Pageant ( herein after referred to as Pageant) in the following terms and conditions.**

Section A: TITLE

1.  This entire Agreement will begin upon signing by the Title Holder and is for the term beginning with the winning of the title at the **2009 Mrs. United States Pageant** and ending upon the Crowning of the 2010 Mrs. United States at the 2010 national pageant, at a date and time to be announced during the 2010 year.

2.  This agreement must be signed and returned to MUSP immediately following the conclusion of the 2009 Mrs. United States Pageant, but no later than twenty-four hours following such conclusion. **No prizes or awards will be provided to the Title Holder until this Agreement has been signed and returned to MUSP.**

Page 1 of 6

3.  Title Holder will, within thirty (30) days of the commencement of this Agreement, provide and deliver to MUSP two 8 x10 professional photos: one (1) color, full length, showing the sash and crown, one (1) color, head and shoulders, showing the Mrs. in sash and crown.  MUSP shall be entitled to use the photos in connection with its promotion of the pageant.

4.  Upon expiration or termination of this Agreement, any rights of the Title Holder to such trademarks, names, logos, etc. shall expire and terminate.  Title Holder shall immediately discontinue use of such name, logos, and marks, etc., and all brochures, promotional materials, etc. using such names, logos, and marks shall be turned over to MSUP, without cost to MSUP.

5.  Title Holder further agrees that, upon the expiration of her reign, she will no longer be entitled to wear the Mrs. United States crown or sash, and that thereafter she may only be referred to as the former Mrs. United States, or the year of her reign.

## Section B:  MEDIA PUBLICITY/ADVERTISING/PROMOTION

1.  A national telecast of the national pageant is planned by MUSP.  Title Holder acknowledges, however, that the actual telecast of the national pageant is not in the sole control of the MUSP.  MUSP agrees to reasonably endeavor to arrange for such national television coverage.  The failure, however, to arrange such telecast shall not be a breach by MUSP hereunder.

2.  Title Holder certifies that she is not a party to any present management, agency, product or service contract which would in any way conflict with the services to be performed by her in connection with the title "Mrs. United States".  Title Holder further agrees that MUSP has exclusive right and control over all personal appearances made as "Mrs. United States".

3.  Title Holder agrees that she will not pursue or enter into any agreement without the prior written consent of the MUSP Executive Director, for services to be performed consisting of modeling, advertising, theatrical or promotional services, or any personal appearances in which the title or affiliation with the Mrs. United States Pageant is used, for the period of her reign.  Any violation will result in the immediate relinquishment of the Title.

4.  Title holder agrees that rights to any commercial or charitable endorsements, promotions, advertising, appearances, performances, presentations, addresses, speeches, publications, productions or other events or enterprises that involve a fee, honorarium, or other form of direct or indirect compensation, of any kind whatsoever, that makes use of, includes or otherwise involves the Title of **MRS. UNITED STATES, OR THE LOGO, TRADEMARK OR MAKE OF MUSP** in any way whatsoever, shall belong exclusively to Mrs. United States Pageant, Inc.  Compensation shall be made directly to MUSP.  Title Holder shall be entitled to a 50% share of said compensation after reasonable expenses have been paid by MUSP.  At the option of MUSP, an agreement for advertising or performing rights made during the term of this Agreement may be continued for a total period (including the original term) not exceeding five (5) years.  The fifty percent (50%) sharing in the net proceeds to which the Title Holder is entitled shall continue during such extended period.

5.  Title Holder may print stationary in connection with her Title, but it must be approved in advance by MUSP.

6. Upon notification from MUSP, Title Holder agrees immediately to cease and desist from using any advertising or publicity to which MUSP has not given prior approval and which MUSP believes is not to be in the best interest of the Mrs. United States Pageant or MUSP.

7. Title Holder shall not incur, and is not authorized to incur, any obligations or debts for, or on behalf of MUSP, or any co-sponsors or any sponsors of radio or television shows covering MUSP events. Title Holder acknowledges that MUSP and the co-sponsors are in no way obligated to pay for any debts or fulfill any promises made by the Title Holder in such regard.

8. MUSP shall have the right to use and authorize the use of name, autograph, voice recording, photographs or other likeness, and biographical and publicity material of the Title Holder for advertising, publicity, and any electronic recording or broadcast related to the national pageant and/or MUSP activities.

9. Title Holder shall cooperate with MUSP in the exploitation of publicity, promotion and marketing of any aspect of the license that will benefit the goals and/or objectives of MUSP and the national pageant.

10. It is agreed, and the Title Holder acknowledges, that it may be in the interest and to the benefit of the Title Holder and MUSP to make certain personal appearances on behalf of MUSP, its sponsors or otherwise for which no fee is charged, and Title Holder agrees to faithfully comply with said request from MUSP, but in such event MUSP shall arrange for all transportation and reasonable living expenses.

11. Title Holder hereby releases MUSP, its officers, employees and any related person from any claims, causes of action, expenses and costs for any injuries or demands sustained by Title Holder as a result of or during participation in appearances and activities contemplated herein, including but not limited to travel to and from personal appearance sites.

## Section C: STANDARDS

1. Title Holder agrees she will maintain the highest standards of morality, good judgment and care in conducting herself as Mrs. United States.

2. Title Holder acknowledges she is presently married and residing with her spouse. She can not now be in the process of being divorced or separated from her current spouse and must continue to be married (and not in the process of divorce or separation) throughout the Title Holder's reign.

3. Title Holder acknowledges she was at least twenty-one (21) years of age prior to the date of the State Pageant competition and that she furnished proof of age to the State Director at the time of registration.

4. Title Holder acknowledges she is and has been a citizen of the United States prior to the date of the State Pageant competition. A military person in residence at a military establishment is acceptable.

5. Title Holder acknowledges she is, to the best of her knowledge, in good health and that is, during the year of her reign, she becomes ill or experiences an injury or accident, she will be

responsible for any and all cost pertaining thereto, including physician's fees, hospital or emergency care, or for any other associated costs or procedures.

6. Any misconduct deemed socially unacceptable and/or in non-compliance with this Agreement will result in the immediate relinquishment of the Title, crown, banner and prizes awarded prior to termination of this Agreement, and the First Runner-up will immediately assume the duties and responsibilities of the Title Holder and receive all prizes/awards thereafter.

7. If Title Holder is disqualified, she relinquishes all legal claims, actions, suits or liabilities against the MUSP and its assigns now and in the future, regardless of any and all situations.

## Section D: CONTRACTOR

Title Holder acknowledges that she is an independent contractor herein. This agreement in no way binds either MUSP or the Title Holder into a joint venture or partnership.

## Section E: EXCLUSIVITY

Title Holder agrees that during the term hereof, Title Holder will not participate or be involved in any local, regional, or nation pageant. Such exclusive involvement in pageant activity during the term hereof is a motivating decision on the part of MUSP in granting the Title to the Title Holder herein.

## Section F: NATIONAL PAGEANT

1. MUSP shall, at MUSP's own cost, arrange for and provide to the Title Holder round trip air transportation to the city where the national competition for the title of **MRS. UNITED STATES** will be held, from the Title Holder's state of residence, or any location of a shorter distance the Title Holder may be in at that time. Any travel insurance or other incidental expenses incurred shall be the responsibility of the Title Holder.

2. Title Holder agrees to be available during the pageant week for the following, in conjunction with the national pageant 2010, if so requested or required:
   a. Appearances in connection with the Pageant, including but not limited to publicity, public relations, pageant promotion or other appearance;
   b. Demonstrations of the prizes and promotional considerations offered in connection with the production and broadcast of any broadcast programs; and
   c. Performing in connection with presentations of the recording, all prize and fashion segments, and commercials, which may be utilized and broadcast in connection with such program.

3. Title Holder shall furnish and bring with her for the 2010 Mrs. United States Pageant, at no cost to MUSP, the following:
   a. A minimum of one evening gown;
   b. Adequate wardrobe for events associated with the Pageant;

4. Title Holder shall look solely to the Executive Director or Director's representatives, with respect to all matters relating to Title Holder's promotion, marketing, preparation, rehearsal, production and all other matters relating to the national pageant.

## Section G: AWARDS/PRIZES

1. Title Holder understands that all awards and/or prizes presented in conjunction with the winning of the Title of Mrs. United States, not offered or provided directly by MUSP, are subject to the actions of the independent suppliers and/or sponsors. MUSP disclaims any liabilities for taxes, lost, destroyed or stolen prizes or awards, or the actions of sponsors or independent suppliers in conjunction with such prizes or awards. Taxes and shipping costs applicable to awards or other benefits shall be the responsibility of the Title Holder.

2. MUSP will provide to the Title Holder all awards/prizes that are the sole responsibility of MUSP. $3000 will be awarded to Title Holder as follows, $1,500 at the signing of this agreement and the balance ($1,500) to be awarded after her reign at the crowning of the 2010 Mrs. United States.

## Section H: GENERAL

1. Any changes to this Agreement shall be given in writing. Any modifications shall not be binding upon MUSP unless signed by an authorized officer thereof, or unless said Rules and Regulations are amended by MUSP.

2. The Title Holder understands that she has relinquished all legal actions, claims or liabilities in reference to the Mrs. United States Pageant, its officers, directors, agents and employees. Any violation or breech of this Agreement by Title Holder will result in the immediate relinquishment of the Title.

3. Title Holder shall promptly advise MUSP in writing of any claim (oral or written, whether it appears to Title Holder to have merit or otherwise) which questions the procedures, production, selection process, integrity, and/or any other matter relating to the Title Holder's Title. If such claim or statement includes any written or specific material, a copy of all such material shall promptly be furnished to MUSP.

4. If any claim of infringement or alleged infringement of MUSP trade names, trademarks, or logos is made and brought to the attention of the Title Holder, Title Holder shall give prompt written notice thereof to MUSP. MUSP shall handle and control the defense of such infringement claim.

5. There are no representations, promises, warranties, covenants or undertakings other than those contained in this Agreement, which represents the entire understanding of the parties.

6. This Agreement shall be construed in accordance with the internal laws of the State of New York. The venue for any proceedings relating to the provisions hereof, or the construction, interpretation, or enforcement thereof, or any breach or alleged breach thereof, shall take place in the City of Rochester, State of New York, regardless of the forum in which this agreement or any part thereof may have been negotiated or executed.

7. Should any part, term or provision of this Agreement be declared to be illegal or in conflict with any law, rule or regulation, the validity of the remaining portions, terms or provisions shall not be affected thereby.

8.  This agreement is not assignable in whole or in part by the Title Holder, nor may the Title holder license or sub-license any right licensed to it hereunder, without the specific written approval of MUSP.

9.  This Agreement shall be come effective when accepted by an authorized officer of MUSP.

ACCEPTED AND AGREED TO:                    ACCEPTED AND AGREED TO:


_____           _Isabella Ilacqua_____
Signature of Title Holder \ Date           Isabella Ilacqua, President   Date
                                           MRS. UNITED STATES PAGEANT, INC.